Eugene P. Ramirez (State Bar No. 134865)
  *eugene.ramirez@manningkass.com*
Marguerite L. Jonak (State Bar No. 143979)
  *marguerite.jonak@manningkass.com*
David Fleck (State Bar No. 192912)
  *David.Fleck@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Third-Party Defendants,

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF BRANDON YATES, by and through its successors-in-interest, Dan Yates and Andrea Carrier; DAN YATES and ANDREA CARRIER,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, KELLY MARTINEZ, in her individual capacity, RICH WILLIAMS, in his individual capacity, MATTHEW BLACKBURN, in his individual capacity, TONY GONZALEZ, in his individual capacity and DOES 151,<br><br>Defendants.<br><br>COUNTY OF SAN DIEGO,<br><br>Third Party Plaintiffs/Cross-Claimant,<br><br>v. | Case No. 25-cv-410-W-MMP<br><br>**NOTICE OF MOTION AND MOTION OF NAPHCARE TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with Proposed Order*<br><br>Assigned to: Hon. Thomas J. Whelan<br>Courtroom: 3C<br><br>[*Magistrate Michelle M. Pettit*]<br><br>**Hearing Date**: January 26, 2026<br><br>**[NO ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1(d)(1)]** |

|   |
|---|
| DR. HUDAD TOLLOUI; DR. REBECCA ROBINSON; DR. PETE J. FARRELL IV; MIRANDA EVANS; LIBERTY HEALTHCARE CORPORATION; LIBERTY HEALTHCARE OF CALIFORNIA, INC.; NAPHCARE OF SAN DIEGO, INC.; NAPHCARE, INC.; AND ROES 1-30,<br><br>           Third Party Defendants/Cross-Defendants. |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on January 26, 2026, in the courtroom of Honorable Thomas J. Whelan (Courtroom 3C), located at the United States District Court, Southern District of California, James M. Carter and Judith N. Keep United States Courthouse, 333 West Broadway, San Diego, CA 92101; pursuant to Federal Rules of Civil Procedure 7, 8, 10, 11, and 12, and United States District Court, Southern District of California Local Rule 7.1, as well as the applicable Orders of the Court; Third-Party Defendant NaphCare, Inc., NaphCare of San Diego, LLC, Dr. Hudad Tolloui, Dr. Rebecca Robinson, Dr. Peter J. Farrell IV, and Miranda Evans ("NaphCare Third-Party Defendants") will move this Court for an order dismissing, without leave to amend, County of San Diego's Third-Party Complaint filed against NaphCare Defendants on September 18, 2025.

This Motion is made pursuant to Fed. R. Civ. Pro., Rule 12(b)(1) and (6) for lack of ripeness and failure to state a claim for which relief can be granted and upon the following grounds:

1.The first claim: Breach of Contract Against NaphCare of San Diego, LLC, and NaphCare, Inc. (labeled "Cross-claim Defendants"), is subject to dismissal as it fails to state a claim – to the extent it seeks contractual indemnification pursuant to 42 U.S.C. section 1983 and California Civil Code section 52.1. Further, Plaintiff's

claims against the County in this action do not relate to and arise out of work performed pursuant to any contractual agreement.

2)The second claim: Equitable Indemnity Against all Third-Party Defendants (labeled "Cross-claim Defendants"), is subject to dismissal as it fails to state a claim against individuals Dr. Hudad Tolloui, Dr. Rebecca Robinson, Dr. Peter J. Farrell IV, and Miranda Evans. Further, Plaintiff's claims against the County in this action do not relate to and arise out of work performed by the individual defendants pursuant to any contractual agreement or otherwise; and

To the extent it seeks indemnification pursuant to 42 U.S.C. section 1983 and California Civil Code section 52.1 against all NaphCare Third-Party Defendants, such relief is unavailable as a matter of law.

1.The third claim: Declaratory Relief Against all Third-Party Defendants (labeled "Cross-claim Defendants"), is subject to dismissal as it fails to state a claim against individuals Dr. Hudad Tolloui, Dr. Rebecca Robinson, Dr. Peter J. Farrell IV, and Miranda Evans. Further, Plaintiff's claims against the County in this action do not relate to and arise out of work performed by the individual defendants pursuant to any contractual agreement or otherwise; and

To the extent it seeks indemnification pursuant to 42 U.S.C. section 1983 and California Civil Code section 52.1 against all NaphCare Third-Party Defendants, such relief is unavailable as a matter of law.

In the *alternative*, NaphCare Defendants hereby request that this Honorable Court dismiss any or all of the aforementioned claims, with or without prejudice, as may be appropriate, and to the fullest extent available at law.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

1  DATED:  December 5, 2025        **MANNING & KASS**
2                                  **ELLROD, RAMIREZ, TRESTER LLP**

4                       By:        */x/ David L. Fleck*
5                                  Eugene P. Ramirez
6                                  Marguerite L. Jonak
                                   David L. Fleck
7                                  Attorneys for Third Party Defendants

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 4
I.   INTRODUCTION ................................................................................................ 4
II.  RELEVANT BACKGROUND ........................................................................... 5
III. RELEVANT ALLEGATIONS ........................................................................... 6
IV.  STANDARD FOR MOTION TO DISMISS ...................................................... 8
V.   CLAIMS AGAINST THIRD PARTY DEFENDANTS ARE IMPROPER ..... 10
   A. The TPC Lacks Ripeness ............................................................................... 10
     1. There is no connection between the underlying Complaint and the allegations made in the TPC. ........................................................................ 10
     2. The indemnity claim should be dismissed as premature. ........................... 14
VI.  CLAIMS FOR INDEMNITY SUBJECT TO SECTION 1983 AND THE BANE ACT ARE IMPROPER ............................................................................... 15
   A. No Right to Indemnity For Claims Pursuant to Section 1983 ........................ 15
   B. No Right to Indemnity For Claims Pursuant to the Bane Act ........................ 16
VII. NO LEAVE TO AMEND .................................................................................. 16
VIII. CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Allen v. City of Los Angeles*, 92 F.3d 842, 845 n. 1 (9th Cir.1996) ........................ 14
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)............................................................... 8
*Banks v. City of Emeryville*, 109 F.R.D. 535 (N.D.Cal.1985)................................. 14
*Bell Atlantic Corp. v. Twombly*, 555 U.S. 544, 555 (2007) ....................................... 7
*Chaset v. Fleer/Skybox Int'l,* 300 F.3d 1083, 1087-1088 (9th Cir. 2002) ................ 16
*Christian v. City of Los Angeles*, 176 Cal. App. 3d 466, 471 (1986)...................... 13
*City of San Diego v. U.S. Gypsum Co.*, 30 Cal. App. 4th 575, 587, 35 Cal. Rptr. 2d 876 (1994)............................................................................................................. 14
*Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995) ........................................... 16
*Dreier v. United States*, 106 F.3d 844, 847 (9th Cir .1996). ...................................... 9
Fed. R. Civ. Pro., Rule 12(b)(1) .................................................................................. 8
Federal Rule of Civil Procedure 12(b)(1) ................................................................... 9
*Flaxman v. Ferguson*, 151 F.4th 1178, 1184 (9th Cir. 2025) ..................................... 9
*Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.*, 148 Cal.App.4th 937, 973 (2007) ................................................................................ 10
*Hoa v. Riley*, 78 F. Supp. 3d 1138, 1145 (N.D. Cal. 2015) ..................................... 14
*Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) ..................................... 15
*In re Gilead Scic. Sec. Litig.*, 536 F.3d 1049, 1056-1057 (9th Cir. 2008 ................... 7
*Iqbal*, 556 U.S. at 677, (*citing Twombly*, 550 U.S. at 557). ....................................... 8
*J.B. Painting and Waterproofing, Inc. v. RGB Holdings, LLC*, 650 Fed. Appx. 450, 454 (9th Cir. 2016) ................................................................................................ 14
*Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir. 2008) ............. 7
*Lopez v. Smith*, 203 F.3d 1122, 1126-31 (9th Cir. 2000) ........................................... 8
*Marceau v. Blackfeet Hous. Auth.,* 540 F.3d 916, 919 (9th Cir. 2008)....................... 7
*Moss v. United States Secret Serv.*, 572 F.3d 962 (9th Cir.2009) .............................. 8
*Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001)................................................. 7
*Pride v. Correa*, 719 F.3d 1130, 1133 n. 6 (2013) .................................................... 9
*Reese v. County of Sacramento,* 888 F.3d 1030, 1043 (9th Cir. 2018). ................... 15
*Rosales v. Cnty of San Diego*, 511 F.Supp.3d 1070, 1082 (S.D. Cal. 2021) ............. 7
*Rosales v. Cnty of San Diego*, 511 F.Supp.3d at 1082, (*citing Iqbal*, 556 U.S. at 678) (*quoting Twombly*, 550 U.S. at 555)...................................................................... 8
*Safe Air for Everyone*, 373 F.3d at 1039 ................................................................... 8
*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)..................... 7
*St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) .................................... 9
*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998) ................... 15
*Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir.2012)......................... 9
*Tesoro Ref. and Mktg. Co. LLC v. City of Long Beach*, 334 F. Supp. 3d 1031, 1049 (C.D. Cal. 2017).................................................................................................... 14
*W. Steamship Lines, Inc. v. San Pedro Peninsula Hosp.*, 8 Cal. 4th 100, 108, 32 Cal. Rptr. 2d 263, 876 P.2d 1062 (1994) ...................................................................... 13

**Rules**

Fed. R. Civ. P. 12(b)(6 ............................................................................................... 7
Federal Rule of Civil Procedure 12(b)(6) ................................................................... 7
Rule 12(b)(6) dismissal ............................................................................................... 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On September 18, 2025, County of San Diego ("County") filed a Third-Party Complaint ("TPC") against NaphCare of San Diego, LLC, and NaphCare, Inc. ("NaphCare"), Dr. Hudad Tolloui, Dr. Rebecca Robinson, Dr. Peter J. Farrell IV, and Miranda Evans ("Individual Third-Party Defendants") (collectively "NaphCare Third-Party Defendants"). *See* ECF Document ["Doc."], 36.

The TPC specifically seeks breach of contract against NaphCare and equitable indemnity and declaratory relief against all NaphCare Third-Party Defendants. However, the underlying Complaint on which the County predicates its TPC does not provide an avenue for such claims.

First, Plaintiff's[1] claims against the County in the underlying action ***do not*** arise out of work performed pursuant to the NaphCare Agreement. In fact, the underlying Complaint does not contain allegations that would trigger any claim for liability. Indeed, the underlying action filed by the parents of decedent, Brandon Yates, frames the action as a failure to protect action, not one based on medical care.

As the Complaint states in its introduction: "Within 24 hours, [of booking] Brandon was found face down on the floor of his cell, naked with his hands and feet bound behind his back. His cellmate Alvin Ruis had tortured and sexually assaulted Brandon. Rui[s] had choked and smothered Brandon to death." Compl. at p. 1.

The Complaint goes on to describe Ruis as a "bypass inmate" who was not allowed to be with other detainees. *Id*. Further, Ruis's reason for incarceration was predicated on his history of violence and mental health:

> One month before his December 2023 arrest, Ruis … [suffered] a psychotic episode which led him to act erratically. Ruis was involuntarily committed … from November 21, 2023, until November 28, 2023…[Compl. ¶ 32]

---

[1] Estate of Brandon Yates, by and through Dan Yates and Andrea Carrier, as individuals and successors in interest. *See* Complaint, Doc. 1 ["Compl."].

3

Case No. 25-cv-410-W-MMP

> On or about December 2, 2023, Ruis physically assaulted his wife and one of his minor children. Shortly thereafter, Ruis believed God was telling him to travel to Rome. [Compl. ¶ 33]
>
> While on a plane en route to Rome, Ruis had a manic episode and assaulted a flight attendant. He was detained in London and involuntarily hospitalized at a mental hospital from around December 7, 2023, to around December 20, 2023,.. [Compl. ¶ 34]
>
> On December 27, 2023, the Chula Vista Police Department arrested Ruis … after he again assaulted his children and wife. [Compl. ¶ 35]

Even so, Ruis had threatened multiple cellmates and had assaulted a deputy. He was not to be housed with others in his cell. However, on January 15, 2024, Mr. Yates was placed unmonitored in Ruis' cell for one hour, and Ruis killed him.

Again, this is not an action based on a medical provider's actions, but one from a classification standpoint. As such, the TPC claims are not ripe, as plead. Put differently, there is no basis to hold medical providers liable, irrespective of medical care provided to Ruis. There is no specific intent to find a constitutional violation and a causal break for any theory of negligence – as plead.

Second, to the extent it seeks indemnification pursuant to 42 U.S.C. section 1983 and California Civil Code section 52.1 against all NaphCare Third-Party Defendants, such relief is unavailable as a matter of law.

For these reasons, NaphCare Third-Party Defendants submit that the TPC is subject to dismissal. Since much of its failure to state a claim is predicated on the underlying Complaint's lack of allegations to attribute this action against NaphCare Third-Party Defendants, an amendment would be futile.

## II. RELEVANT BACKGROUND

On February 24, 2025, Plaintiffs filed an action against the County, Kelly Martinez, Rich Williams, Matthew Blackburn, Tony Gonzalez ("County Defendants"), and Does 1-51. *See* Compl. Then, on April 30, 2025, the County Defendants moved to dismiss the Complaint. *See* Doc. 11. On August 21, 2025, this Court denied the County Defendants' motion to dismiss, and highlighted the County and the individual defendants' issues with classification, failure to protect, and

summon medical care. *See* Doc. 16.

In denying the motion, the Court framed the Complaint's first cause of action for deliberate indifference under the theory of "failure to protect from harm." *See id*. at pp. 6-13. However, the Court did not elucidate any facts or connections to medical providers to "properly assess, treat, and monitor" as inaccurately alleged by the TPC. *Compare* TPC ¶ 20.

As to the second and third causes of action, for failure to train and *Monell* municipal liability, the Court found the factual allegations regarding "inmate housing classification" and "muting safety intercoms" showed "a pattern of placing inmates with other inmates with a propensity for violence and muting emergency intercoms." *See id*. at pp. 13-18. There was no mention of medical care practices. *Id*.

Under the fourth cause of action, for right of association, the Court rejected the County's argument that "Plaintiffs have failed to provide facts showing that the **deputies** were deliberately indifferent to a known or obvious danger for Yates." *See id*. at p. 19.

Under the fifth cause of action under the Bane Act, "Plaintiffs have sufficiently alleged Mr. Yates's rights were violated by coercion." *See id*. at p. 20. As for the sixth and seventh causes of action for wrongful death and negligence under state law, the Court found Plaintiffs' "allegations sufficiently allege that Defendants had reason to know that **Mr. Yates required immediate medical care**." *See id*. at 23. Ultimately, on September 4, 2025, the County Defendants filed its Answer to the Complaint. Doc. 17. Then, on September 18, 2025, the County filed its Third Party Complaint against NaphCare Defendants. Doc. 20.

**III.    RELEVANT ALLEGATIONS**

In the TPC, the County attempts to link liability to the Individual Third-Party Defendants on the basis that they were the mental healthcare professionals NaphCare assigned to the County jails. *See* TPC ¶ 18. The County then states only that the underlying Complaint asserts negligence and wrongful death claims against

DOE defendants whom it identifies as corresponding to the Third-Party Cross-Defendants in this action. *See* TPC ¶ 19. The TPC does not reference, or attempt to connect these individuals to, any of the federal claims.

The TPC asserts that the Complaint "also specifically identifies these individuals as contractors and subcontractors of the County." TPC ¶ 21. However, the cited paragraphs by the TPC from the Complaint do not support a liability connection to the identified Does 37-51. *See* TPC ¶ 20. Rather, the references to the Complaint's paragraphs (38, 41-43, 47, 51, 52, 55-57, 66, 132, 134, 136, 314, 318, 322) were incomplete and too attenuated to connect to NaphCare Third-Party Defendants. *See* TPC at pp. 5-8.

Relevant, here, the Complaint only directly identifies medical personnel in the following paragraphs:

> Defendant Medical Does 37-46 were medical and mental health personnel responsible for assessing inmates and providing psychiatric care. Does 37-46 knew of the lengthy history of mental illness and reports of serious psychiatric problems Ruis was experiencing but failed to treat or monitor him. They failed to place him in a housing unit where he could be monitored and/or medicated. They failed to notify the classification staff and housing deputies of the dangers Ruis posed to others. [Compl. ¶ 25]

> At all times relevant to this complaint, Medical Supervisory Does 47-51 were supervisory medical and mental health personnel Does 47-51 were responsible for training, supervising, disciplining, and overseeing medical and mental health personnel. [Compl. ¶ 26]

The allegations in the Complaint do not support the TPC's assertion that "*inter alia*, [] Third Party / Cross-defendants were negligent and careless in, among other things, allegedly not properly addressing the symptoms they observed in Ruis and or Yates." *See* TPC ¶ 22. To be sure, the Complaint explains that despite the deputies knowledge of notable symptoms, they still placed Yates and Ruis in the same cell. *See* e.g., Compl. ¶¶ 65-67, 188.

Notwithstanding, the TPC alleges, "[NaphCare's] mental health providers saw and examined Ruis during the December 27, 2023, to January 16, 2024, period at issue in the Complaint, including in the contexts alleged in the Yates Complaint

regarding DOE medical and mental health providers." TPC ¶ 23.

## IV. STANDARD FOR MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). "The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief." *Rosales v. Cnty of San Diego*, 511 F.Supp.3d 1070, 1082 (S.D. Cal. 2021) (quotations omitted).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.,* 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). But the Court is *not* required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scic. Sec. Litig.*, 536 F.3d 1049, 1056-1057 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief *above the speculative level*, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 555 U.S. 544, 555 (2007) (emphasis added).

Thus, to avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'

[Citation.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation.]" *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n],' 'that the pleader is entitled to relief.' [Citation.]" *Id.* at 679.

Further, "[a]lthough Rule 8 does not require 'detailed factual allegations,' ... 'it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Rosales v. Cnty of San Diego*, 511 F.Supp.3d at 1082, (*citing Iqbal*, 556 U.S. at 678) (*quoting Twombly*, 550 U.S. at 555). A complaint is subject to dismissal "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677, (*citing Twombly*, 550 U.S. at 557).

"In sum, for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962 (9th Cir.2009). If the court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss the complaint with *or* without leave to amend. *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1126-31 (9th Cir. 2000).

Similarly, a motion to dismiss may also be brought on grounds of ripeness. *See* Fed. R. Civ. Pro., Rule 12(b)(1). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. Id. "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal

jurisdiction.' " *Pride v. Correa*, 719 F.3d 1130, 1133 n. 6 (2013) (*quoting Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir.2012). A factual challenge can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir .1996).

## V. CLAIMS AGAINST THIRD PARTY DEFENDANTS ARE IMPROPER

The rules of civil procedure provide that a cross-claim can be brought if the party against whom it is asserted "is or may be liable to the cross-claimant for all or part" of plaintiff's claim. Fed. R. Civ. P. 13(g). However, here, the claims against NaphCare Third-Party Defendants are not ripe and do not state a cognizable claim.

### A. The TPC Lacks Ripeness

Under Federal Rule of Civil Procedure 12(b)(1), it remains well-settled that "[w]hether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of Article III of the federal constitution." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

The "ripeness doctrine is designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Flaxman v. Ferguson*, 151 F.4th 1178, 1184 (9th Cir. 2025). "To protect against judicial engagement in hypothetical or speculative disputes, [a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id*., citing *Texas v. United States*, 523 U.S. 296, 300 (1998).

#### 1. There is no connection between the underlying Complaint and the allegations made in the TPC.

As an initial matter, the claims in the TPC are grounded in contractual and equitable indemnity. Contractual indemnity depends on the contractual relationship

between the parties and a breach of the contract between them. *Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.*, 148 Cal.App.4th 937, 973 (2007). "The elements of a cause of action for [equitable] indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is . . . equitably responsible." *Bailey v. Safeway, Inc.*, 199 Cal.App.4th 206, 217 (2011).

Here, there is no concrete connection between the underlying Complaint and the allegations made in the TPC. As pled currently, the Complaint asserts its deprivation of rights action on a theory of failure to protect Mr. Yates. It is not based on the medical care provided. This is further supported by the Court's dismissal of the County's motion to dismiss the underlying Complaint.

The Court observed Mr. Yates' had issues with mental health but was knowingly housed with a "bypass inmate" who also was known to be violently mentally unstable. The Court noted:

> The Complaint further alleges that Mr. Ruis had previously been removed from shared housing with other inmates due to threats he had made against those cellmates and was labeled a "bypass inmate." [ ] A bypass inmate is a label given to someone who must be kept separate from other inmates because they are believed to be a danger to themselves and other inmates. [ ] Plaintiffs allege the jail staff was aware of Mr. Ruis's status as a bypass inmate, but despite the danger, was cleared from EOH and returned to his cell in Module 4C. [ ]
>
> *See*. Doc. 16. at p. 2
> …
>
> At the time of his arrest, Mr. Yates was struggling with mental health and addiction. ([ ] When booked at the San Diego Central Jail, the Complaint asserts he was placed in Cell 2 of Module 4C, and while there, his mental health struggles were amplified, he spoke nonsensically, babbled nonstop, and angered his cellmates. [ ]
>
> The next day, one of his cellmates alerted Deputy Blackburn that "there would be trouble" if Mr. Yates was not removed from their cell. [ ] The Complaint alleges that shortly after, Mr. Yates was placed in a shared cell with Mr. Ruis even though Deputy Blackburn knew Mr. Ruis was a bypass inmate who was not assigned another cellmate because of his violent tendencies. [ ]
>
> *See*. Doc. 16. at p. 2-3.
> …

> The Complaint asserts that within minutes of being placed in Mr. Ruis's cell, the two began having a conversation about God. [ ] … Mr. Ruis became convinced that Mr. Yates was the devil, and the conversation quickly turned hostile. (Id.) Mr. Ruis sat next to Mr. Yates and placed his hand on his thigh, prompting Mr. Yates to spring away from him. [ ] Seeing this as a sign that Mr. Yates was the devil, he told him he was going to kill him. [ ]
>
> Mr. Yates began pressing the call button at the door of the cell to summon help, saying multiple times, "[t]hey are going to kill me." [ ] At some point, Mr. Ruis pressed the emergency call button himself. [ ] However, the Complaint alleges that the jail had a practice of ignoring or "bypassing" calls from the inmates, and Mr. Yates's calls for help were muted for at least 15 minutes. [ ] Deputies failed to respond to the calls for nearly an hour. [ ]

*See*. Doc. 16. at p. 3.

The events are too attenuated as pled, which causes any potential inchoate claim against Third Party Defendants to be pure speculation at this point. This is insufficient to sustain indemnity claims against the NaphCare Third Party Defendants.

The tenuous connection between the underlying Complaint and the TPC is further demonstrated in the allegations against the Individual Third Party Defendants and Doe Defendants. For example, the TPC only lists four specific allegations:

> On January 2, 2024, January 4, 2024, and January 11, 2024, and other dates, Hudad Tolloui observed, examined, and/or evaluated *Ruis*. TPC ¶ 24.
>
> On January 2, 2024, and January 12, 2024, and other dates, Rebecca Robinson observed, examined, and/or evaluated *Ruis*. TPC ¶ 25.
>
> On January 3, 2024, and other dates, Peter Farrell observed, examined, and/or evaluated *Ruis*. TPC ¶ 26.
>
> On January 5, 2024, and other dates, Miranda Evans observed, examined, and/or evaluated *Ruis*. TPC ¶ 27.

No other specific actions are described that would provide for a specific participation required to sustain the Section 1983 and Bane Act claims asserted in the underlying action. Additionally, the TPC fails to allege a plausible causal connection between these allegations and negligence and/or wrongful death.

As to the Doe Defendants, below are the specific citations to the Complaint that the TPC attempts to use:

    Compl. ¶ 27: Does 1-51 were agents of Defendant County of San Diego, including contractors or subcontractors authorized to work at the Jail.

    No individual's agency was shown with the County.

    Compl. ¶ 38: On numerous occasions during his 19-day incarceration at the Central Jail, Ruis had been declared a danger to himself and others.

    Compl. ¶ 41: Upon information and belief, while in EOH, Ruis displayed heightened aggressive behavior, verbally attacking EOH employees and threatening suicide and violence to others.

    Compl. ¶ 42: Within the first few days of his incarceration at SDCJ, Ruis was sent to EOH for fashioning a rope out of jail-supplied clothing and attempting to hang himself with it. Ruis was sent back to the Module 4C shortly after.

    Compl. ¶ 43: No one admitted Ruis to the Psychiatric Stabilization Unit (PSU) where mentally ill patients can be monitored and involuntarily medicated if necessary.

    Compl. ¶ 47: Throughout his time at San Diego Central Jail, it was clear that Ruis suffered from a significant mental illness that manifested in violent outbursts toward inmates and deputies.

    Compl. ¶ 51: Each time Ruis was placed in EOH, defendants would release him instead of treating or monitoring him for his serious mental health problems.

    Compl. ¶ 52: Ruis's dangerous propensities were known to Defendants, including Defendant Blackburn, Defendant Gonzalez, and Does 1-51

    Compl. ¶ 57: Despite showing heightened violent tendencies, Does 37-46, under the supervision of Medical Supervisory Does 47-51, released Ruis from EOH to mainline after every EOH placement without further evaluation, medication, or monitoring.

    Compl. ¶ 314: In evaluating, assessing, and handling Ruis, knowing of his fragile and volatile mental condition, including homicidal and suicidal tendencies, knowing he was placed in EOH and in solitary confinement on numerous occasions, knowing he struggled to maintain any sort of relationship with inmates around him due to his violent demeanor, and knowing he was a high risk to any inmate assigned to be his cellmate, Does 1-10 and 37-46 failed to classify and house Ruis and Brandon Yates properly. They failed to protect Brandon from harm that was predictable.

    Compl. ¶ 318: Defendants improperly, negligently and wrongfully, and recklessly, failed to take any action to ensure Ruis would not harm Brandon.

> Compl. ¶ 322: As a direct and proximate result of the Defendant's negligent conduct as herein, Brandon died.

These paragraphs highlighted in the TPC fail to allege that any medical staff would have the duty or ability to officially declare Ruis a danger to himself and/or the placement of cellmates. In fact, there is no mention of what actions by medical staff would make them liable. Rather, the allegations allege the knowledge and actions of deputies.

That said, even paragraph 132 does not allege that any medical staff failed to advise deputies about Ruis. Instead, it states: "Upon information and belief, Does 11-21, 37-46 and Medical Supervisory Does 47-51 had a responsibility to advise JPMU deputies about Ruis's continual danger. Defendants had the responsibility to advise JPMU deputies to reclassify Ruis according to his violent propensities." Compl. ¶ 132.

The TPC alleges no facts showing that a NaphCare employee caused or contributed to Mr. Yates' unfortunate death. As such, there is no basis for the claims against the NaphCare Third-Party Defendants. At most, the TPC suggests indemnity could arise only from some alleged individual wrongdoing by NaphCare's employees. Because the TPC identifies no such conduct, it fails to state any viable indemnity claim against NaphCare.

### 2.  The indemnity claim should be dismissed as premature.

"[Aa] fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement." *Christian v. City of Los Angeles*, 176 Cal. App. 3d 466, 471 (1986). Indeed, equitable indemnity claims arise from the principle that an individual who has paid a judgment which ought to have been paid by another wrongdoer may recover from that wrongdoer. *See W. Steamship Lines, Inc. v. San Pedro Peninsula Hosp.*, 8 Cal. 4th 100, 108, 32 Cal. Rptr. 2d 263, 876 P.2d 1062 (1994).

The County has not alleged (and cannot yet allege) that they have paid any

judgment to Plaintiff. Thus, even if the indemnity claim was otherwise legally viable, it should be dismissed without prejudice as it is premature. *See, e.g., J.B. Painting and Waterproofing, Inc. v. RGB Holdings, LLC*, 650 Fed. Appx. 450, 454 (9th Cir. 2016) (holding that under California law, "the cause of action for equitable indemnity accrues when the indemnitee suffers a loss through payment of an adverse judgment or settlement") (internal quotations omitted); *City of San Diego v. U.S. Gypsum Co.*, 30 Cal. App. 4th 575, 587, 35 Cal. Rptr. 2d 876 (1994) ("Our Supreme Court has consistently ruled that a cause of action for indemnity does not accrue until the indemnitee suffers loss through payment of an adverse judgment or settlement."); *Tesoro Ref. and Mktg. Co. LLC v. City of Long Beach*, 334 F. Supp. 3d 1031, 1049 (C.D. Cal. 2017) (dismissing indemnity and contribution claims as premature when plaintiff did not allege that it had paid an adverse judgment).

## VI. CLAIMS FOR INDEMNITY SUBJECT TO SECTION 1983 AND THE BANE ACT ARE IMPROPER

### A. No Right to Indemnity For Claims Pursuant to Section 1983

"The Ninth Circuit has concluded that '[t]here is no federal right to indemnification provided in 42 U.S.C. § 1983.'" *Hoa v. Riley*, 78 F. Supp. 3d 1138, 1145 (N.D. Cal. 2015)("Hoa"), *citing Allen v. City of Los Angeles*, 92 F.3d 842, 845 n. 1 (9th Cir.1996) *overruled on other grounds Acri v. Varian Ass'ns, Inc.*, 114 F.3d 999 (9th Cir.1997). The *Hoa* Court went onto explain, "[t]he Ninth Circuit began its analysis by holding that there was no right to indemnification under Section 1983. *Allen* cited with approval *Banks v. City of Emeryville*, 109 F.R.D. 535 (N.D.Cal.1985)." Which stated:

> In *Banks*, the plaintiffs' decedent burned to death while in the custody of the city jail. [citation] Ms. Banks's body was found on a mattress that had disintegrated in the fire. Plaintiffs brought an action against the city under 42 U.S.C. § 1983. The city filed a third-party complaint against parties involved in the manufacture, distribution, or sale of the mattress, alleging that the mattress was defective. [citation]. The city sought indemnification or contribution. [citation]. Banks held that Section 1983 does not provide for indemnification. [citation]. Noting the absence of clear authority on the issue, Banks reasoned that "[t]he

> Supreme Court made it clear that courts are not free to read a cause of action for indemnity into statutes where no statutory basis exists for such a claim.

*Hoa*, 78 F. Supp. at 1145–46.

"[N]o provision of § 1983, nor any legislative history, to support [third-party plaintiff's] assertion that § 1983 provides for a right of contribution or indemnity," then "any claims for indemnification against third-party defendants based directly upon § 1983 are impermissible." *Banks*, 109 F.R.D. at 539.

The law is well-settled that the federal causes of action provide no basis for the County to seek indemnity from the NaphCare Third-Party Defendants.

### B. No Right to Indemnity For Claims Pursuant to the Bane Act

A claim under California Civil Code section 52.1 ("The Bane Act") rests on an individual's specific intent, who interferes by threat, intimidation, or coercion, or with the exercise or enjoyment of another's individual rights under the Constitution or laws of the United States or California. *See Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).

The Ninth Circuit has held that if a Bane Act claim rests solely on an alleged constitutional violation, then the claimant must show that the defendant had a "specific intent" to commit the constitutional violation. *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022). Further, statutes may limit one's right to recover comparative indemnity. *See*, e.g., *E.W.Bliss Co. v. Superior Court*, 210 Cal.App.3d 1254, 1259 (1989). Absent any legislative intent to permit indemnity under the Bane Act, the Court should be cautious about imposing such a remedy.

## VII. NO LEAVE TO AMEND

Here, a curative measure to allow the TPC to move past the pleading stage rests with the underlying action. Given the nature of the action firmly grounded in housing classification, dismissal without leave to amend is improper. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998) (internal quotation marks, brackets, and citation omitted).

Leave to amend should be granted if it appears plausible that the defects in the complaint could be corrected. Thus, if a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995). But, if after careful review it becomes clear that a complaint cannot be cured by amendment, the court may dismiss the complaint without leave to amend. *See Chaset v. Fleer/Skybox Int'l,* 300 F.3d 1083, 1087-1088 (9th Cir. 2002).

## VIII. CONCLUSION

For the foregoing reasons, the Court should grant NaphCare Defendants' motion and dismiss the Third-Party Complaint. In the alternative, the Court should dismiss Plaintiffs' claims to the fullest extent the Court deems appropriate.

DATED: December 5, 2025

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**

By: */s/ David L. Fleck*
Eugene P. Ramirez
Marguerite L. Jonak
David L. Fleck
Attorneys for Third Party Defendants