UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

THE ESTATE OF BRANDON YATES, by and through its successors-in-interest, Dan Yates and Andrea Carrier; DAN YATES and ANDREA CARRIER,

Plaintiffs,

v.

COUNTY OF SAN DIEGO, KELLY MARTINEZ, in her individual capacity, RICH WILLIAMS, in his individual capacity, MATTHEW BLACKBURN, in his individual capacity, TONY GONZALES, in his individual capacity, and DOES 1-51,

Defendants.

COUNTY OF SAN DIEGO,

Third-Party Plaintiff,

v.

DR. HUDAD TOLLOUI; DR. REBECCA ROBINSON; DR. PETE J. FARRELL IV; MIRANDA EVANS; LIBERTY HEALTHCARE CORPORATION;

Case No.: 25cv0410-W-MMP

**ORDER DENYING IN PART AND GRANTING IN PART THIRD-PARTY DEFENDANTS' MOTION TO DISMISS [DOC. 45]**

LIBERTY HEALTHCARE OF CALIFORNIA, INC.; NAPHCARE OF SAN DIEGO, INC.; NAPHCARE, INC.; AND ROES 1-30,

Third-Party Defendants.

Pending before the Court is Third-Party Defendants NaphCare, Inc., NaphCare of San Diego, LLC ("NaphCare"), Dr. Hudad Tolloui ("Dr. Tolloui"), Dr. Rebecca Robinson ("Dr. Robinson"), Dr. Peter J. Farrell IV ("Dr. Farrell") and Miranda Evans' ("Evans") (collectively the "Third-Party Defendants[1]") motion to dismiss the third-party complaint under Federal Rule of Civil Procedure 12(b)(6). Third-Party Plaintiff the County of San Diego ("the County") opposes the motion. The Third-Party Defendants filed a reply in support.

The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the following reasons, the Court **DENIES IN PART** and **GRANTS IN PART** the motion to dismiss [Doc. 45] **WITH LEAVE TO AMEND**.

## I. BACKGROUND

This lawsuit arises from the death of twenty-four-year-old Brandon Yates ("Yates") while in custody at the San Diego County Central Jail ("SDCJ"). (*Original Complaint* ("OC") [Doc. 1] ¶¶ 68, 69, 117.) The Estate of Brandon Yates ("Plaintiffs") asserts four causes of action under 42 U.S.C. § 1983, including deliberate indifference, failure to properly train, supervise, discipline, *Monell* liability, and violation of the right of association, as well as causes of action under the Bane Act, for negligence, and wrongful death. (*See OC*.) Yates was placed in a cell with Alvin Ruis ("Ruis"), another

[1] The Court will later refer to Dr. Robinson, Dr. Tolloui, Dr. Farrell, and Evans, collectively as the "Third-Party Individual Defendants."

inmate suffering from mental illness, who sexually assaulted, strangled, and smothered Yates to death. (*Id.* ¶¶ 70, 77, 79, 94–117.)

Prior to his arrest, Ruis experienced psychotic episodes that resulted in involuntary hospitalizations in Montana and London. (*Id.* ¶¶ 32–35.) Shortly after his return home, Ruis assaulted his wife and children and was arrested on numerous charges. (*OC* ¶ 35.) At his arraignment, Ruis' family requested that he receive help and expressed concern that he "would commit suicide or murder someone as he had threatened on multiple occasions." (*Id.* ¶ 36.)

Within his first few days at SDCJ, Ruis attempted to hang himself with a rope made from jail-supplied clothing and was placed in Enhanced Observational Housing ("EOH"). (*Id.* ¶ 42.) During his incarceration there, Ruis experienced auditory hallucinations and psychosis, displayed increasingly aggressive behavior, threatened suicide and violence against others, and assaulted a deputy. (*Id.* ¶¶ 38, 41, 44–46, 54–55.) Although Ruis was repeatedly declared a danger to himself or others and placed in EOH on multiple occasions, he was released back into mainline housing each time by medical providers (Does 37–46) "without further evaluation, medication, or monitoring." (*Id.* ¶¶ 38–41, 57, 65.) Plaintiffs allege that Ruis was never placed in segregation housing or the Psychiatric Stabilization Unit ("PSU"), where mentally ill inmates are monitored constantly and involuntarily medicated if necessary. (*Id.* ¶¶ 43, 66.)

Yates was booked into the SDCJ on suspicion of burglary. (*OC* ¶ 68.) Like Ruis, Yates suffered from mental illness, and his "nonsensical" speech caused his cellmates to become aggressive toward him. (*Id.* ¶¶ 71–72.) At his cellmates' request, Deputy Blackburn transferred Yates out of the cell and placed him in a cell with Ruis despite alleged knowledge of both inmates' conditions. (*Id.* ¶¶ 73–77.) Both Ruis and Yates allegedly suffered from "hyper-religiosity" and "spoke obsessively about God." (*Id.* ¶ 79.) Yates believed he was Jesus, while Ruis believed Yates was the devil and told Yates that "he was going to kill him." (*Id.* ¶¶ 79–80, 84.) Plaintiffs allege that although both inmates pressed the emergency intercom for help, deputies did not check on them for

nearly an hour, during which time Ruis sexually assaulted, strangled, and killed Yates. (*Id*. ¶¶ 85–117.)

On February 24, 2025, Plaintiffs filed a complaint against the County and several of its employees. (*See OC*.) On September 18, 2025, the County filed a TPC against NaphCare and Liberty Healthcare Corporation and Liberty Healthcare of California, Inc. ("Liberty Healthcare") and several of its employees. (*See TPC*.) The TPC alleges that the County contracted with NaphCare to provide mental health services in County jails, and its employees allegedly provided care to Ruis and/or Yates. (*Third-Party Complaint* ("TPC") [Doc. 20] ¶¶ 2–3.) The TPC further alleges that NaphCare, in turn, contracted with Liberty Healthcare[2] to provide those same services, and its employees also allegedly provided care to Ruis and/or Yates. (*Id*. ¶¶ 4–5.) Third-Party Defendant Dr. Tolloui, a clinical psychologist, Third-Party Defendant Dr. Robinson, a registered psychological associate and/or licensed clinical psychologist, Third-Party Defendant Dr. Farrell, a psychiatrist, as well as Third-Party Defendant Evans, a clinical social worker, were employees of either NaphCare or Liberty Healthcare at the time of Yates' death. (*Id*. ¶¶ 6–9.)

The County's TPC asserts causes of action for: (1) Breach of Contract as to Third-Party Defendant NaphCare; (2) Equitable Indemnity as to all Third-Party Defendants; and (3) Declaratory Relief as to all Third-Party Defendants. (*See TPC*.) The TPC incorporates the allegations of the OC in its entirety. (*Id*. at 7.) After the Third-Party Defendants filed the pending motion to dismiss, Plaintiffs filed a first amended complaint ("FAC") [Doc. 66], which identifies many of the Doe Defendants, including Dr. Tolloui and Dr. Robinson as Does 38 and 39. (*FAC* ¶¶ 28, 59, 60, 102–109.) Because the TPC has not been amended to incorporate the FAC, the Court considers the FAC only to determine whether leave to amend should be granted.

---

[2] On January 6, 2026, Liberty Healthcare was dismissed from the TPC by joint motion. (*See Dismissal Order* [Doc. 54].)

## II. LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). But a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

Courts have broad discretion to grant leave to amend a complaint. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020). This discretion includes the right to deny leave to amend where such amendment would be futile. *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023) (citing *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)).

/ / / /

/ / / /

/ / / /

## III. Analysis

### A. First Cause of Action: Breach of Contract

NaphCare seeks dismissal of the County's breach of contract cause of action on the basis that the allegations in the original complaint are based on a failure to protect, not deficient medical care, and therefore the duty to defend was never triggered. (*MTD* [Doc. 45] 7:12–8:14, 9:25–17:19; *Reply* [Doc. 59] 5:9–6:28.) The County disagrees and argues that Plaintiffs have alleged "specific failures by mental health clinicians," triggering NaphCare's contractual duty to defend, which they allege NaphCare failed to tender. (*Opp'n* [Doc. 55] 5:19, 7:21–25.) NaphCare also seeks dismissal of the cause of action "[t]o the extent that it seeks indemnification pursuant to 42 U.S.C. § 1983 and California Civil Code § 52.1." (*Id.* 3:18–19.) The Court considers each issue in turn.

#### i. Duty to Defend[3]

Under California law, a contractual duty to defend arises "when the facts alleged in the complaint create a potential for coverage." *Premier Pools Mgmt. Corp. v. Colony Ins. Co.*, 328 F.Supp.3d 1075, 1084 (E.D. Cal. 2018), aff'd, 815 Fed. Appx. 168 (9th Cir. 2020). The duty to defend further extends "where extrinsic facts known to the insurer suggest the claim may be covered." *Id*. If there is a potential for coverage, the insurer must fully defend the action, as "[i]t cannot parse the claims, dividing those that are at least potentially covered from those that are not." *Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997) (citation modified).

NaphCare's contract with the County identifies the conditions upon which NaphCare is obligated to defend and indemnify the County. In pertinent part, it reads:

> County shall not be liable for, and Contractor shall *defend and indemnify* County and the employees and agents of County (collectively, "County Parties"), against any and all claims, demands, liability, judgments, awards, fines, mechanics' liens or other liens, labor disputes, losses, damages,

---

[3] In its reply, NaphCare argues based on preemption that the unavailability of indemnity for federal law claims conflicts with California law extending the duty to defend to the entire action. However, given this argument was not advanced in the moving papers, the Court will not consider it.

> expenses, charges or costs of any kind or character, including attorneys' fees and court costs (hereinafter collectively referred to as "Claims"), related to this Agreement or the work covered by this Agreement and *arising either directly or indirectly from any act, error, omission or negligence of Contractor or its Contractors, licensees, agents, servants or employees*, including, without limitation, Claims caused by the sole passive negligent act or *the concurrent negligent act, error or omission, whether active or passive, of County Parties*.

(*TPC* Exh. B, Article 10 at ¶ 10.1 (emphasis added).)

Although NaphCare argues that "Plaintiffs do not allege any direct act or omission by the NaphCare Third-Party Defendants that gives rise to liability[,]" the contract expressly covers both the direct and indirect acts of its employees. (*Reply* 6:24–28.) NaphCare likewise argues that Plaintiffs allege the decision to house Ruis and Yates together resulted in his death, not "deficient medical care." (*MTD* at 7–8, *Reply* 6:22–24.) However, the contract also expressly covers "[c]laims caused by the sole passive negligent act or the *concurrent* negligent act, error or omission, whether active or passive, of County Parties" thereby extending NaphCare's duty to defend and indemnify to claims arising *indirectly* from acts or omissions of its employees. (*TPC* Exh. B, Article 10 at ¶ 10.1 (emphasis added).) Therefore, NaphCare's duty to defend is not defeated merely because other defendants' acts, errors, or omissions allegedly contributed to Yates' death, or because the alleged conduct of NaphCare's employees was not the direct cause of death.

Furthermore, the TPC alleges that NaphCare and Liberty Healthcare providers "saw and examined Ruis during the . . . period at issue in the Complaint including in the contexts alleged in the Yates Complaint regarding DOE medical and mental health providers." (*TPC* ¶ 23.) For example, the OC and TPC allege that Does 37–46 "released Ruis from EOH to mainline after every EOH placement without further evaluation, medication, or monitoring" despite knowing the severity of Ruis' condition and his heightened propensity towards violence. (*Id.* ¶¶ 25, 51–52, 57, 131.) They further allege that had Does 37–46, among others, "followed their policies and procedures, Ruis would

have been properly classified and [Yates] would have never been placed in [the same cell as Ruis].” (*Id.* ¶ 134.) Accordingly, NaphCare’s motion to dismiss the County’s first cause of action is **DENIED**.

**ii. Limitations on Indemnity**

NaphCare also argues that, to the extent the County’s breach of contract cause of action is premised on a contractual duty to indemnify NaphCare for liability arising under 42 U.S.C. § 1983 and California Civil Code § 52.1, such indemnity is improper as a matter of law. (*MTD* 18:13–19:22.) In this regard, the County seems to recognize that there are “claims for which indemnity may not exist,” but does not argue or provide authority supporting the availability of indemnity for the causes of action. (*Opp’n* [Doc. 55] 7:7–9.) The County also concedes that NaphCare’s “liability for contractual indemnity of the County will depend on findings yet to be made in this action.” (*Id*. at 3:13–14.)

Courts in the Ninth Circuit have consistently held that “[t]here is no federal right to indemnification provided in 42 U.S.C. § 1983.” *Allen v. City of Los Angeles*, 92 F.3d 842, 845 n. 1 (9th Cir. 1996) (citing *Banks v. City of Emeryville*, 109 F.R.D. 535, 539 (N.D. Cal. 1985) (overruled on other grounds in *Acri v. Varian Ass’ns, Inc.*, 114 F.3d 999 (9th Cir. 1997)). These courts have additionally held that any indemnity afforded by California law does not apply to § 1983 causes of action, as doing so “would not serve Section 1983’s policies of compensation and deterrence.” *Hoa v. Riley*, 78 F.Supp.3d 1138, 1147 (N.D. Cal. 2015) (citing *Hurley v. Horizon Project, Inc.*, No. CV 08-2009-1365, 2009 WL 5511205, at *5 (D. Or. Dec. 3, 2009)). Accordingly, the County is barred as a matter of law from seeking indemnity for liability under Plaintiffs’ § 1983 causes of action.

Regarding the Bane Act, NaphCare argues that “the claimant must show that the defendant had a ‘specific intent’ to commit the constitutional violation.” (*MTD* 15:15–17) (quoting *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022)). As this Court has previously explained, the level of intent required for a deliberate indifference claim under

the Bane Act is one of "reckless disregard." *Bach v. County of San Diego*, No. 24-cv-1687 W-DTF, 2026 WL 110331, at *3–4 (S.D. Cal. Jan. 14, 2026) (citing *Sandoval v. County of San Diego*, 985 F.3d 1118, 1125 (9th Cir. 2021) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016))). Therefore, there is no inherent limitation on indemnity under the Bane Act, but a claimant must allege facts demonstrating reckless disregard.

Here, although Plaintiffs have alleged facts that could rise to the level of reckless disregard[4], as discussed above, neither the OC nor the TPC specifically identifies Does 37–46 as employees of NaphCare. Given that the allegations are not directed at Does who are specifically alleged to be NaphCare employees, a cause of action for contractual indemnity against NaphCare based on the Bane Act is insufficiently pled. However, because the County has stated a cognizable legal theory for breach of contract based on NaphCare's duty to defend, the Court declines to dismiss the cause of action.

**B. Second Cause of Action: Equitable Indemnity**

Dr. Robinson, Dr. Tolloui, Dr. Farrell, and Evans (collectively the "Third-Party Individual Defendants") seek dismissal[5] of the County's equitable indemnity cause of action on the basis that Plaintiffs' allegations do not concern a failure to provide medical care. (*MTD* 14:3–15:28.) The County disagrees and asserts that it may bring an equitable indemnity cause of action against the Third-Party Individual Defendants as alleged concurrent tortfeasors at least with respect to the negligence and wrongful death causes of action. (*Opp'n* 3:13–15, 6:26–7:7.)

---

[4] As an example, the OC alleges that Does 37–46 "witness[ed] Ruis express suicidal and homicidal ideas and attempt[ed] to take his life," yet allowed for Ruis' return to general population despite knowing that it was "unsafe for him to be with another person." (*OC* ¶¶ 188, 194.)

[5] Like the breach of contract cause of action, the Third-Party Defendants also seek dismissal of this cause of action on the basis that indemnity is unavailable for the § 1983 and Bane Act causes of action. (*Id.* 18:13–19:22.) As described above, indemnity is unavailable for the § 1983 causes of action but is available for the Bane Act so long as the defendant acted with reckless disregard.

Under California law, a claim for equitable indemnity may be brought "either (1) by filing a cross-complaint in the original tort action or (2) by filing a separate indemnity action after paying more that its proportionate share of the damages[6]." *Hoa*, 78 F.Supp.3d at 1148 (quoting *Henry v. Superior Court*, 160 Cal.App.4th 440, 449, 72 Cal.Rptr.3d 808 (2008). Equitable indemnity "enables a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis[7]." *General Motors Corp. v. Doupnik,* 1 F.3d 862, 866 (9th Cir. 1993) (citing *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 599, 146 Cal.Rptr. 182, 195, 578 P.2d 899, 912 (1978) (superseded by statute on other grounds)). However, a claim for equitable indemnity requires that the "prospective indemnitor and indemnitee are jointly and severally liable." *Id*. (quoting *GEM Developers v. Hallcraft Homes*, 213 Cal.App.3d 419, 430, 261 Cal.Rptr. 626, 632 (1989)). In the context of indemnity, joint and several liability requires that the indemnitor and indemnitee are both responsible for the same harm. *Molko v. Holy Spirit Ass'n*, 46 Cal.3d 1092, 1127–1128 (1988) (superseded by statute on other grounds).

Although the County states that equitable indemnity is "appropriate because the Plaintiffs in the *Yates* lawsuit have alleged that the Doe mental health clinicians were negligent in addition to the County's employees being negligent[,]" which would render them joint tortfeasors, the OC does not name or contain allegations directed towards any of the Third-Party Individual Defendants. (*See Opp'n* at 7:27–8:3.) The TPC recites the allegations against Does 37–46 from the OC and supplements the allegations only with the dates on which the Third-Party Individual Defendants "observed, examined, and/or evaluated Ruis." (*TPC* ¶¶ 24–27.) The allegations against Does 37–46 cannot be attributed to the Third-Party Individual Defendants without explicitly connecting them to the alleged negligence, and as such the County's equitable indemnity cause of action

---

[6] NaphCare also argues that a claim for equitable indemnity may only be brought once an indemnitee has suffered loss, however California case law indicates otherwise.

[7] In its opposition, the County quotes language which is not found in the case cited. While similar, the County is cautioned that quotations should be exact replications of the court's language.

cannot be sustained. Accordingly, the motion to dismiss the second cause of action as to the Third-Party Individual Defendants is **GRANTED**.

In considering whether to grant leave to amend, the Court again considers the allegations in the FAC. As discussed above, the FAC identifies Dr. Tolloui and Dr. Robinson as Does 38 and 39, respectively, and asserts individualized allegations against them. (*FAC* ¶¶ 102–103.) By contrast, the FAC adds only limited allegations concerning Dr. Farrell and Evans. It does not name Dr. Farrell as a defendant and mentions him only once alleging that during a visit nearly two weeks before Yates' death, he reached a medical conclusion contradicting Dr. Robinson's and declined to prescribe antipsychotic medication to Ruis. (*FAC* ¶ 59.) The FAC does not mention Evans at all. Its sole allegation concerning Evans remains the same as in the TPC, which states that "[o]n January 5, 2024, and other dates, Evans observed, examined, and/or evaluated Ruis." (*TPC* ¶ 27.) The allegations against Dr. Farrell and Evans are likely insufficient to state a claim, however, it is unclear whether amendment will be futile, and as a result, the Court grants **LEAVE TO AMEND** as to all the Third-Party Individual Defendants.

### C. Third Cause of Action: Declaratory Relief

Lastly, NaphCare seeks dismissal of the County's declaratory relief cause of action on the basis that it is derivative of invalid claims. Given the Court's denial of the motion to dismiss the breach of contract cause of action and that leave to amend has been granted as to equitable indemnity cause of action, there is a live controversy and accordingly the motion to dismiss this cause of action is **DENIED**.

## IV. CONCLUSION & ORDER

For the reasons stated above, the Court **DENIES IN PART** and **GRANTS IN PART** the Third-Party Defendants' motion to dismiss [Doc. 45]. The motion is **DENIED** as to the first and third causes of action but **GRANTED** as to the second cause of action with **LEAVE TO AMEND**. To the extent the TPC seeks indemnity for liability under Plaintiffs' § 1983 causes of action, such claims are barred as a matter of law. To the

extent the TPC seeks indemnity for liability under Plaintiffs' Bane Act cause of action, such claims are not barred but facts must be alleged demonstrating reckless disregard. The first amended third-party complaint shall be filed no later than **September 2, 2026**.

**IT IS SO ORDERED**.

Dated: August 19, 2026

Hon. Thomas J. Whelan
United States District Judge